NATIONAL POLE CO. v. CHICAGO & N. W. RY. CO.

(District Court, E. D. Wisconsin. November 14, 1912.)

COMMERCE (§ 89*)—INTERSTATE FREIGHT RATE—OVERCHARGE—REPARATION—SUBMISSION TO INTERSTATE COMMERCE COMMISSION—PRIOR DETERMINATION.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 9, 24 Stat. 382 (U. S. Comp. St. 1901, p. 3159), provides that any person or persons claiming to be damaged by any common carrier subject to the provisions of the act may either make complaint to the Commission or bring suit to recover damages for which the carrier may be liable in any federal court of competent jurisdiction, but shall not have the right to pursue both remedies. *Held* that, where a shipper claimed a right to recover aggregate excess freights alleged to have been paid on various interstate shipments, alleging that the rate charged consisted of the sum of local rates through a point of concentration, and that the rule that a shipper

should only be entitled to the benefit of a lower through rate when the original bill did not state the ultimate destination, was unreasonable, a complaint charging that such condition had been previously submitted to the Interstate Commerce Commission in another proceeding by different shippers against the defendant carrier, and had been found unreasonable and invalid, was insufficient to relieve plaintiff from the duty of submitting its claim to the Commission before beginning suit in a federal court thereon.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*]

Action by the National Pole Company against the Chicago & Northwestern Railway Company. On demurrer to complaint. Sustained.

The complaint, though voluminous, setting forth many different causes of action upon claims alleged to have accrued in favor of the plaintiff, or its assignors, to whose rights it succeeded, involves these facts:

Many shipments of poles were made over the defendant's road, to Escanaba, Mich., and thence transshipped to various destinations throughout the United States. Upon original shipments to Escanaba, and upon their subsequent reshipment from that point to ultimate destination, local rates were in each case charged. These rates are alleged to be in excess of the lawful through rate, or the lowest combination of rates; that, while these rates were in accord with the regularly published tariff, they were charged and exacted under a rule containing a condition which is unreasonable, viz.: The tariff provided that shipments of the commodity specified might be dressed, sawed, or concentrated in transit, and then forwarded or carried from the concentration point at other rates, which are less than a combination of local rates from the original to the transit point, and from the latter to ultimate destination, *but only on condition that the shipping bill issued at the origin of the shipment specify the ultimate destination.*

The shipments described in the complaint were not billed in accordance with the condition contained in the tariff, but directly to Escanaba, and upon reshipment rebilled to their ultimate destinations. The plaintiff seeks to recover the aggregate excess freights paid, claiming that, the poles having been in fact concentrated, the shipments were entitled to the lower through rate; the condition of the tariff requiring designation of the ultimate destination being charged to be unreasonable.

Other allegations of the complaint, pertinent to the questions presented, are referred to in the opinion.

Edward H. S. Martin, of Chicago, Ill., for plaintiff.

Edward M. Smart, of Milwaukee, Wis., and C. C. Wright, of Chicago, Ill., for defendant.

GEIGER, District Judge (after stating the facts as above). The sufficiency of the complaint is challenged, because it fails to allege that the plaintiff or any of its assignors ever complained to the Interstate Commerce Commission of the unreasonableness of the rule or the condition embodied in the concentration tariff above noted, and because it fails to allege that claim for reparation· upon any of the shipments described was ever presented to the Commission. To meet this contention, it being assumed that, as a general proposition, the aid of the federal court in the situation presented cannot ordinarily be invoked, the plaintiff relies upon the following allegation of the complaint:

"That on the 8th day of February, A. D. 1909, at a hearing before the Interstate Commerce Commission of the United States of America, upon a petition or complaint filed against said defendant, a certain controverted question was submitted to said Commission to determine under the statutes of

the said United States in such case made and provided, sometimes known as the Interstate Commerce Laws of the said United States, enacted by the Congress thereof and in full force and effect at all times therein stated, as to whether said condition that the shipping bill at said original point must show the ultimate destination of the shipment in order to secure through rates with said transit or concentration privilege, was unreasonable and resulted in excessive charges; and on the 14th day of June, A. D. 1909 (16 I. C. C. 382), the said Interstate Commerce Commission, after a full hearing of the matter upon said petition, or complaint, determined and decided that the said condition was unreasonable and resulted in excessive charges for carrying lumber, posts, and poles over the defendant's said lines of railroad."

In other words, while the claims now held by the plaintiff have never been made the basis of complaint to the Commission, the latter has, in another proceeding, at the instance of another party having similar claims against this same defendant, determined the unreasonableness of the rule or condition in question. It is assumed that the allegation above quoted adequately sets forth the character of and the determination in such other proceeding, and therefore the direct question is raised whether the complaint states a cause of action, in view of the provisions of the Interstate Commerce Act, construed as hereinafter noted. Doubtless it is sought to maintain the action under section 9 of the Act to regulate interstate commerce, viz.:

"That any person or persons, claiming to be damaged by any common carrier subject to the provisions of this act, may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any District or Circuit Court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt.   *   *   *"

The first consideration given this section respecting the questions raised by the demurrer was in the case of Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, where it was held, in substance that a shipper could not maintain an action at common law in a state court for excessive and unreasonable freight rates exacted on interstate shipments, where the rates charged were those which had been duly fixed by the carrier pursuant to the commerce act, and had not been found to be unreasonable by the Interstate Commerce Commission. Mr. Justice White, in delivering the opinion of the court, said:

"Indeed, no reason can be perceived for the enactment of the provision endowing the administrative tribunal, which the act created, with power, on due proof, not only to award reparation to a particular shipper, but to command the carrier to desist from violation of the act in the future, thus compelling the alteration of the old or the filing of a new schedule, conformably to the action of the Commission, if the power was left in courts to grant relief on complaint of any shipper, upon the theory that the established rate could be disregarded and be treated as unreasonable, without reference to previous action by the Commission in the premises. This must be, because, if the power existed in both courts and the Commission to originally hear complaints on this subject, there might be a divergence between the action of the Commission and the decision of a court. In other words, the established schedule might be found reasonable by the Commission in the first instance, and unreasonable by a court acting originally, and thus a conflict would arise which would render the enforcement of the act impossible."

The decision, therefore, authoritatively excludes what upon the face of section 9 appears to be a grant of alternative or optional courses to be pursued in seeking redress of the grievances referred to. Such conclusion was reached in view of the context of the whole act to regulate commerce, disclosing a design to endow the Interstate Commerce Commission as a single administrative tribunal with power to entertain original proceedings, and primarily to give relief to those deeming themselves aggrieved by the practices of carriers.

In the later case of Robinson v. Baltimore & Ohio Railroad Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288, the doctrine of the Abilene Case is reaffirmed, and held applicable alike to claims based upon unreasonable rates, and to those based upon alleged discriminatory rates. It has received recognition in Phillips v. Grand Trunk Western Railway Co. (C. C. A.) 195 Fed. 13, and Morrisdale Coal Co. v. Pennsylvania R. Co., 183 Fed. 929, 106 C. C. A. 269; the latter being a suit for damages based upon an alleged unreasonable regulation for the distribution of cars. In the Phillips Case the demurrers to the complaint presented the identical question raised in the case now before us; and while the court recognizes the doctrine of the Abilene Case, the claim of the defendant railway companies that the right of action was barred by the statute of limitations was sustained, and it can hardly be said that the insufficiency of the complaint respecting the allegations of a prior determination by the Commission was recognized, so as to be a controlling feature of the decision.

It is urged by the plaintiff that these cases go no further than to announce, as a general principle, the necessity of a precedent determination by the Commission of the unreasonable, illegal, or discriminatory character of the particular rate or practice complained of; hence, when once determined, no matter at whose instance, the principle is satisfied, and the aid of a court may then be invoked upon other claims arising under the same rate, practice, or rule. Support for this contention is sought in the reasons said to underlie the principle, namely, the securing of uniformity, and the prevention of confusion between the Commission and the courts in administering the act. It is said that, the Commission having once passed upon a rate or rule, there is no destruction or impairment of the uniformity and equality designed by the act, nor is there danger of confusion, or divergence of views between the Commission and the courts, because the Commission has acted primarily, and, so far as its attitude upon any particular question may be material, it is readily ascertainable in any proceeding in court.

But it seems to me that the principle, as announced, must be held to be more comprehensive than this. The design of the act, as construed, is not only to have the Commission pass primarily upon the questions involved in a particular rate or practice, but, as an administrative body, to pass upon all claims arising under such rate or practice, to the end that it, as such body may, in each case, make appropriate order for reparation. If the principle be not applied to this extent, then the necessary functions of the Commission have

been discharged when it has ruled upon a test case, leaving the option to all others thereafter to seek redress either before the Commission or in the courts. That this would be productive of the very mischief sought to be prevented by the construction given the act in the cases cited may be well illustrated by the case now before us. It is alleged that the Commission, upon complaint of other shippers, had determined the condition in the concentration tariff to be unreasonable; and, by reference to the reported decision, it appears that such ruling was made upon claims accruing to other parties, at other times, and arising out of shipments concentrated at another point. Although it appears that reparation was ordered, it is equally clear that if the present plaintiff, at the time of the commencement of this suit, had made complaint to the Commission, the issue would have been, not merely the reasonableness or unreasonableness of the tariff condition, but—and this is conceded—also the bar of the statute of limitations contained in the act. It is quite clear that upon this latter issue before the Commission, the carrier would have prevailed and reparation would have been refused, regardless of the reasonableness of the conditions or any other merit of the claims; and its conclusion would be unassailable.

But if the present action may be maintained, the court (assuming that no other limitation was applicable) would be obliged to award reparation. This might be true, even though the Commission had never determined the question of reasonableness or unreasonableness of the condition in question. And thus, in any case where shippers had delayed, beyond the limitation period, proceedings before the Commission, they could invoke the aid of the courts, and the doctrine of the Abilene and Robinson Cases would be nullified. So, too, other issues might arise in the courts, not present in collateral hearings before the Commission, but which, if presented, might have determined the result for or against an award to the particular shipper, regardless of the primary question presented by any rate or rules. Thus, with the limited application of the doctrine for which the plaintiff contends, there is always present a possibility that the courts would be obliged to try, as an issue, the scope and grounds of decision of the collateral proceeding before the Commission, and, as stated, this would be productive of the very confusion sought to be avoided. The Abilene and Robinson Cases must, of course, be accepted as controlling authority by this court; and the construction by them given to section 9 does not, in my judgment, permit the restricted application contended for by the plaintiff.

The conclusion is that the demurrer is well taken, and must be sustained; and an order may be entered accordingly.