FRANK A. GRAHAM ICE COMPANY, Appellant, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*March 12—April 8, 1913.*

*Railroads: Regulation of rates: Constitutional law: Railroad commission: Schedule rates, when lawful: Relief against excessive charges: Exclusive remedy: Common-law action not preserved: Jury trial: Vested rights.*

1. The legislature has power to fix the rates to be charged by railway companies, either directly or by delegation of authority to an appropriate agency, provided the rates fixed are such as to afford reasonable compensation for the services rendered.

2. The remedy provided by secs. 1797—37m (Laws of 1907, ch. 582), 1797—12a (Laws of 1909, ch. 271), and ch. 362, Laws of 1905, for the fixing of freight charges and for relief against excessive charges was intended by the legislature to be exclusive, and full power in respect to these matters is lodged in the railroad commission.

3. Under these statutes, the rates printed in the schedules made and filed by a railway company conformably to law constitute the lawful rates until changed in the manner provided, on application to the commission, and the railway company can charge neither more nor less without violating the law. In a common-law action, therefore, to recover for excessive rates, the courts cannot pronounce such schedule rates unlawful.

4. In view of other parts of ch. 362, Laws of 1905, it is not considered that sec. 34 of that act was intended by the legislature to preserve the common-law remedy to the extent of allowing the schedule rates to be attacked in a common-law action.

5. Secs. 1797—37m and 1797—12a, while they provide for the recovery by a shipper, in certain cases, of part of the money paid although not in excess of schedule rates, do not contemplate that any reparation can be made until application has first been made to the railroad commission under sec. 12, ch. 362, Laws of 1905, and the schedule rates have been found unreasonable or unjustly discriminatory.

6. No one has a vested right to the continuance of a common-law remedy for the redress of future wrongs; hence, secs. 1797—37m and 1797—12a are not unconstitutional because denying the right of trial by jury. Besides, a remedy by action against the railroad commission is preserved in favor of any aggrieved

party, so that the rights of all parties are well guarded under the law.

7. Where the rates paid by a shipper are the schedule and lawful rates at the time when paid, the fact that another shipper afterwards obtains a reduction of rates in a proceeding before the railroad commission, even in the same district, will not bind the railway company in a common-law action by the first shipper to recover for excessive charges, nor sustain such action.

APPEALS from an order of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

This action was brought to recover $2,416.71, alleged excessive freight charges charged plaintiff by defendant on shipments of ice from points in Wisconsin on the line of defendant's railroad between August 20, 1906, and September 26, 1909. The complaint charges in effect that the respondent operated a line of its railroad from the following points in Wisconsin, namely, Merton, North Lake, Random Lake, Pewaukee, Burlington, and Waukesha, to certain freight yards located in Milwaukee, Wisconsin, known as the Chestnut and Fowler street yards of defendant; that the distance from Merton to the Chestnut street yards is 28 miles; from North Lake to the Chestnut street yards, 32 miles; from Random Lake to the Chestnut street yards, 38.5 miles; from Pewaukee to the Chestnut street yards, 26.6 miles; from Burlington to the Chestnut street yards, 50.6 miles; from Waukesha to the Chestnut street yards, 28.6 miles; that the distance from Merton to the Fowler street yards is 31 miles; from North Lake to the Fowler street yards, 35 miles; from Random Lake to the Fowler street yards, 41.5 miles; from Burlington to the Fowler street yards, 43.2 miles; that at the times mentioned in the complaint the conditions and expense of transporting ice in carload lots from each of said places to said Chestnut street yards over the defendant's railroad were substantially the same as the conditions, cost, and expense of transporting ice in carload lots to the Fowler street yards; that during the times mentioned in the complaint the defend-

ant charged plaintiff three cents per hundred pounds of ice shipped over its railroad from the stations named to the Chestnut street yards, and that during said times defendant charged and accepted from parties other than plaintiff two and one-half cents per hundred pounds of ice transported in carload lots over its line from said places to the Fowler street yards, notwithstanding that the distance from said places to said Fowler street yards is from 3 to 7.4 miles greater than from said places to said Chestnut street yards.

That on June 12, 1909, one John Schneider, doing business as Schneider Ice Company in the city of Milwaukee, made complaint to the railroad commission of Wisconsin in accordance with sec. 1797—37m, Stats., charging that the rate of three cents per hundred pounds of ice charged by defendant for transporting ice from Merton to the Chestnut street yards over defendant's railroad was unusual, exorbitant, and discriminatory in comparison with rates charged between other places in the vicinity of Merton to said Fowler street yards. That, after hearing, the railroad commission decided that a charge of three cents per hundred pounds from Merton to the Chestnut street yards was discriminatory and unreasonably high, and ordered discontinuance of the three-cent rate and a substitution of a two and one-half cent rate per hundred pounds, and in pursuance of said order the defendant on the 24th day of September, 1909, discontinued said three-cent rate and substituted and ever since has continued a two and one-half cent rate per hundred pounds for ice in carload lots. That in respect to Chestnut street freight yards, all of the places mentioned in the complaint are in said district and the conditions and expense of transporting ice in carload lots from each of said places to the Chestnut street freight yards were the same, and in fixing the rate said places were regarded in the same freight district.

That the plaintiff demanded a return of the amount of alleged excessive charges, namely, $2,416.71, and the defend-

ant refused to pay the same, for which sum judgment was demanded with costs.

The defendant answered and as a second and separate defense set up the following answer:

"1. That during all of the times mentioned in the complaint it was in every respect complying with ch. 362, Laws of Wisconsin of 1905, relating to the making and filing of copies of all schedules of rates, fares, and charges for the transportation of passengers and property and every service in connection therewith; that the rates charged the plaintiff for carrying the property mentioned in the complaint were those fixed by its schedule of rates in force between the points in question at the time each shipment was made, and that under said chapter it was unlawful for defendant to charge, collect, demand, or receive a greater or less compensation for the transportation of said property than was specified in the printed schedule. That by and under ch. 582 of Laws of Wisconsin of 1907, published in the Laws of Wisconsin for that year as sec. 1797—37m, it was provided in substance that within six months after the delivery of any shipment of freight at destination any person aggrieved might complain to the railroad commission of Wisconsin that the charge exacted for the transportation of such freight between points in Wisconsin is unusual and exorbitant; that thereupon the commission should hear and decide such complaint upon the merits and fix the proper charge if less than the rate charged and paid; that the carrier might refund the excess, and that if it did not an action might be brought against it to recover the same; that any refund made under the ruling of the commission should not render the carrier liable for any penalty or forfeiture or subject to prosecution; that by and under ch. 271, Laws of Wisconsin of 1909, published as such in the Laws of Wisconsin for that year as sec. 1797—12a, it was provided in substance that within thirty days from and after June 4, 1909, any person aggrieved by freight charges paid within five years immediately preceding July 12, 1907, for the transportation of freight between points in Wisconsin, might complain to the railroad commission of Wisconsin in respect to such charges; that the commission should hear and decide the complaint upon the merits, and, if the facts warrant it, fix the proper charge, if less than the amount charged,

and that the carrier might refund the excess and should not
be liable to any penalty or forfeiture or subject to prosecu-
tion on account of such refund.

"2. It alleges, upon information and belief, that the plaint-
iff did not, at any time before the commencement of this ac-
tion, complain to the railroad commission of Wisconsin in
respect to the freight charges mentioned in the complaint, or
any of them, and that no order in favor of the plaintiff in re-
spect to such charges has been made by the said commission.

"3. That all of the shipments alleged in the complaint
were delivered at destination prior to September 27, 1909;
that the action was commenced December 19, 1910, and more
than one year after the date of the last shipment and pay-
ment mentioned and described in the complaint."

The plaintiff demurred to this separate defense for want of
facts sufficient to constitute a defense. From the order of the
court overruling the demurrer this appeal was taken.

For the appellant there was a brief by *Kronshage, Hannan
& McMillan,* and oral argument by *T. J. Hannan.* They
cited, *inter alia, Parker v. G. W. R. Co.* 7 M. & G. 253, 49
Eng. Com. Law, 253; *Smith v. C. & N. W. R. Co.* 49 Wis.
443, 5 N. W. 240; *Graham v. C., M. & St. P. R. Co.* 53 Wis.
473, 10 N. W. 609; *Madison v. Madison G. & E. Co.* 129
Wis. 249, 265, 108 N. W. 65; *Minneapolis, St. P. & S. S.
M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905;
*Southern Pac. Co. v. Colorado F. & I. Co.* 101 Fed. 779;
Barnes, Interstate Transportation, 605–608; Const. U. S.
art. VII; Const. Wis. art. I, secs. 5, 9; Cooley, Const. Lim.
266, 267; *Chicago, B. & Q. R. Co. v. Chicago,* 166 U. S. 226,
17 Sup. Ct. 581; *In re Eldred,* 46 Wis. 530, 1 N. W. 175.

For the respondent there was a brief by *C. H. Van Alstine*
and *H. J. Killilea,* and oral argument by *Mr. Van Alstine.*
They cited *Van Patten v. C., M. & St. P. R. Co.* 81 Fed.
545; *Texas & P. R. Co. v. Abilene C. O. Co.* 204 U. S. 426,
27 Sup. Ct. 350; *Southern R. Co. v. Tift,* 206 U. S. 428, 27
Sup. Ct. 709; *Baltimore & O. R. Co. v. U. S.* 215 U. S. 481,
30 Sup. Ct. 164; *Robinson v. B. & O. R. Co.* 222 U. S. 506,

150    SUPREME COURT OF WISCONSIN.    [Apr.

Frank A. Graham Ice Co. v. Chicago, M. & St. P. R. Co. 153 Wis. 145.

32 Sup. Ct. 114; *Morrisdale C. Co. v. Penn. R. Co.* 176 Fed. 748; *A. J. Phillips Co. v. G. T. W. R. Co.* 195 Fed. 12, 13; *Second Employers' Liability Cases (Mondou v. N. Y., N. H. & H. R. Co.)* 223 U. S. 1, 50, 32 Sup. Ct. 169; *Nat. P. Co. v. C. & N. W. R. Co.* 200 Fed. 185.

KERWIN, J.    The contentions of counsel for appellant here are grounded upon four principal propositions, namely: (1) The common-law right to recover for excessive freight rates is still in force in Wisconsin.    (2) Sec. 1798, Stats., is declaratory of the common-law right to recover for excessive freight rates.    (3) The remedy provided by secs. 1797—37*m* (Laws of 1907, ch. 582) and 1797—12*a* (Laws of 1909, ch. 271) for the recovery of excessive freight rates is concurrent and alternative and not an exclusive remedy.    (4) If the remedy afforded by secs. 1797—37*m*, 1797—12*a*, Stats., and sec. 16, ch. 362, Laws of 1905, is exclusive, said sections are unconstitutional, because they deny the right of trial by jury guaranteed by the federal and state constitutions.

There is no doubt but that the fixing of rates to be charged by railroad companies may be controlled by the legislature within constitutional bounds.    True, the question of whether rates fixed are confiscatory or within constitutional limitations is a judicial question.    *Madison v. Madison G. & E. Co.* 129 Wis. 249, 108 N. W. 65; *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905.    But the legislature has power to fix rates either directly or by delegation of authority to an appropriate agency, provided the rates fixed are such as to afford reasonable compensation for the services rendered.    *Madison v. Madison G. & E. Co., supra; Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm., supra.*

It is plain from the statutes upon the subject that the legislature intended to and did provide an exclusive remedy for the fixing of freight charges.    Ch. 362, Laws of 1905, created the railroad commission.    Sec. 2 thereof defines the term

"railroad" as used in the act, and the act applies to transportation of passengers and property between points in Wisconsin, and to the receiving, switching, delivering, and handling of property and charges connected therewith. Sec. 3 provides that all charges shall be reasonable and just and prohibits unreasonable and unjust charges. Sec. 4 makes it the duty of the railroad companies to establish and file with the railroad commission schedules showing all rates, fares, and charges and to keep such schedules open to public inspection, and prohibits any change in rates, fares, or charges except upon notice to the commission. It requires that all changes shall be plainly indicated upon existing schedules or by filing new ones, and, when any change shall have been made, notice thereof shall be posted in all stations. Secs. 5, 6, 7, 8, 9, 10, and 11 inclusive provide for joint and commodity rates, classification of freight, reduced rates and free transportation, depots, distribution of cars, and interchange of traffic by carriers. Secs. 12, 13, 14, 15, and 16 inclusive treat of complaints and investigations, power to hear and determine the same, attendance of witnesses, taking of depositions, substitution and enforcement of rates, and orders carrying the decision of the commission into effect. Secs. 17 to 31 inclusive provide, among other things, rules of evidence and practice, power of the commission to inquire into the management of railroad companies, investigate rates, prohibit discriminatory preferences and rebates, provide penalties for violations of the act, and investigation of claims.

Part of sec. 4 reads as follows:

"It shall be unlawful for any railroad to charge, demand, collect or receive a greater or less compensation for the transportation of passengers or property or for any service in connection therewith than is specified in such printed schedules, including schedules of joint rates, as may at the time be in force, and the rates, fares and charges named therein shall be the lawful rates, fares and charges until the same are changed as herein provided."

Part of sec. 14 is as follows:

"Whenever, upon an investigation made under the provisions of this act, the commission shall find any existing rate or rates, fares, charges or classifications, or any joint rate or rates, or any regulation or practice whatsoever affecting the transportation of persons or property, or any service in connection therewith, are unreasonable or unjustly discriminatory, or any service is inadequate, it shall determine and by order fix a reasonable rate, fare, charge, classification or joint rate to be imposed, observed and followed in the future in lieu of that found to be unreasonable or unjustly discriminatory, and it shall determine and by order fix a reasonable regulation, practice or service to be imposed, observed and followed in the future, in lieu of that found to be unreasonable or unjustly discriminatory or inadequate, as the case may be."

Sec. 25. "If any railroad shall do or cause to be done or permit to be done any matter, act or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter or thing required to be done by it, such railroad shall be liable to the person, firm or corporation injured thereby in treble the amount of damages sustained in consequence of such violation; provided, that any recovery as in this section provided shall in no manner affect a recovery by the state of the penalty prescribed for such violation."

Sec. 34. "This act shall not have the effect to release or waive any right of action by the state or by any person for any right, penalty or forfeiture which may have arisen or which may hereafter arise under any law of this state; and all penalties and forfeitures accruing under this act shall be cumulative and a suit for, and recovery of one, shall not be a bar to the recovery of any other penalty."

Sec. 37 is as follows: "So much of section 128 of the Statutes of 1898 as provides for the election of a railroad commissioner, also sections 1793 and 1803 of such statutes, and all other acts and parts of acts conflicting with the provisions of this act are hereby repealed in so far as they are inconsistent herewith."

Sec. 1798, Stats. (1898), prohibits discrimination in rates, and provides that no railroad company shall "charge,

demand or receive from any person, company or corporation an unreasonable price for the transportation of persons or property, or for the hauling or storage of freight." And further provides in substance that any railroad corporation which shall violate any of the provisions of the act shall be liable to the person aggrieved in three times the actual damages sustained besides costs.

The original act did not expressly make provision for reparation in cases where the rates were held excessive by the commission, and provision was made therefor by ch. 582, Laws of 1907 (sec. 1797—37m), and ch. 271, Laws of 1909 (sec. 1797—12a).

Ch. 582, Laws of 1907, reads:

"Within six months after the delivery of any shipment of freight at destination any person aggrieved may complain to the commission that the charge exacted for the transportation of such freight between points in Wisconsin is unusual or exorbitant, and thereupon the commission shall have power to investigate such complaint, and to hear the same and to decide upon the merits thereof, in the manner provided by section 12, chapter 362, Laws of 1905. If upon such hearing the commission shall decide that the rate or charge exacted is unusual or exorbitant it shall find, what in its judgment, would have been a reasonable rate or charge for the service complained of. If the rate or charge so found shall be less than the charge exacted the carrier shall have the right to refund to the person paying such charge the amount so found to be excessive. In case of the refusal of the carrier to make such refund, the party aggrieved thereby may maintain an action in the courts of this state, to recover the amount of such excessive charge as found by said commission, and in the trial thereof the findings of the commission shall be *prima facie* evidence of the truth of the facts found by it and no carrier shall be permitted to avail itself of the defense in such action that the shipment involved was in fact made on the published tariff rate in force at the time such shipment was made, but no carrier making a refund upon the order of the commission or pursuant to a judgment of court as herein provided, shall be liable for any penalty or forfeiture, or subject

to any prosecution under the laws of this state, on account of making such refund."

Ch. 271, Laws of 1909, reads:

"Section 1797—12a. Within thirty days from and after the passage of this act, any person aggrieved may complain to the railroad commission of Wisconsin that the charge exacted for the transportation of any property between points in this state, which property was delivered at destination within the period of five years immediately preceding July 12, 1907, or for any service in connection therewith, or that any charge exacted for the storage of any property within such period, or that any car-service or demurrage charge exacted within such period is erroneous, unusual, or exorbitant; and thereupon the said commission shall have power to investigate such complaint, and to hear the same, and to decide upon the merits thereof in the manner provided by section 12, chapter 362, Laws of 1905. If upon such hearing the commission shall decide that the rate or charge exacted is erroneous, unusual, or exorbitant, it shall find what in its judgment would have been a correct rate or charge for the service complained of, and if the rate or charge so found shall be less than the charge exacted, the carrier shall have the right to refund to the person paying such charge the amount so found to be erroneous, unusual, or exorbitant. No carrier making a refund upon the order of the commission as herein provided shall be liable for any penalty or forfeiture or subject to any prosecution under the laws of this state on account of making such refund."

The contention of counsel for appellant that the remedy provided by secs. 1797—37m and 1797—12a is concurrent, alternative, and not exclusive, cannot be sustained. The statutes referred to show that the whole matter of fixing rates and the remedies for excessive charges is lodged with the railroad commission. The rates in the schedule made and filed constitute the lawful rates until changed in the manner provided, on application to the commission. The schedule rates being by the express terms of the statute the lawful rates, the railroad companies have not authority to charge different rates. They are prohibited by statute from so doing. They

can charge neither more nor less than such rates. In a common-law action, therefore, to recover for excessive rates the courts cannot say that the schedule rates are unlawful rates. This obviously is necessary in order to preserve equality and uniformity in rates and the carrying out of the system established by the legislature in creating the railroad commission. *Texas & P. R. Co. v. Abilene C. O. Co.* 204 U. S. 426, 27 Sup. Ct. 350. True, that case arose out of the Interstate Commerce Act, but the reasoning of the court is quite in point here. See, also, *Southern R. Co. v. Tift,* 206 U. S. 428, 27 Sup. Ct. 709; *Baltimore & O. R. Co. v. U. S.* 215 U. S. 481, 30 Sup. Ct. 164; *Robinson v. B. & O. R. Co.* 222 U. S. 506, 32 Sup. Ct. 114.

It is insisted that sec. 34, ch. 362, Laws of 1905, hereinbefore set out, was intended by the legislature to preserve the common-law remedy. It is true that this provision is quite broad, but in view of other parts of the railroad commission law heretofore referred to we are convinced that it was not intended by the legislature to save the common-law remedy to the extent of allowing the schedule rate to be attacked in a common-law action. This, we think, appears clearly from the legislation on the subject heretofore referred to.

It is insisted, however, by counsel for appellant that sec. 1797—37m (ch. 582, Laws of 1907) and sec. 1797—12a (ch. 271, Laws of 1909) contemplate that the shipper can recover in a common-law action a part of the money paid, although not in excess of schedule rates. These statutes, however, do not provide or contemplate that any reparation can be made until the railroad commission has passed upon the question as to whether the schedule rates are excessive. They provide expressly for proceeding before the commission in the manner specified in sec. 12, ch. 362, Laws of 1905, and clearly show that the schedule rates are the lawful rates until the question is first passed upon in a proceeding before the commission in the manner provided.

Sec. 12, ch. 362, Laws of 1905, among other things, pro-

vides that upon complaint to the railroad commission that any rate or rates are in any respect unreasonable or unjustly discriminatory the commission may proceed to investigate as provided in the act, and if upon such investigation the rate or rates shall be found to be unreasonable or unjustly discriminatory, the commission shall have power to fix and order substituted therefor such rate or rates as it shall have determined to be just and reasonable, and it shall be charged and followed in the future.

Sec. 16 of this chapter provides, among other things, that any railroad or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates, may commence an action in the circuit court against the commission as defendant, to vacate and set aside any such order on the ground that the rate or rates are unlawful or unreasonable; and regulates the proceedings in such action.

In the case at bar there was no application by appellant to the railroad commission to change the schedule rates, which rates are claimed to be excessive. The schedule rates must therefore, in the present action, be regarded as the lawful rates. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905.

Sec. 1797—12a, being ch. 271, Laws of 1909, is attacked on the ground that it is a statute of limitation and is unreasonably short under the doctrine laid down in *Relyea v. Tomahawk P. & P. Co.* 102 Wis. 301, 306, 78 N. W. 412, and other cases in this court. But in our view of the case it is unnecessary to consider this point. The plaintiff had no standing in any court for reparation until it first applied to the railroad commission for relief in the manner provided by the statutes.

It is further urged by counsel for appellant that secs. 1797—37m and 1797—12a are unconstitutional because they deny the right of trial by jury, guaranteed by the state and federal constitutions. This contention is unsound. No

one has a vested right to the continuance of a common-law remedy to redress future wrongs. In *Second Employers' Liability Cases (Mondou v. N. Y., N. H. & H. R. Co.)* 223 U. S. 1, 32 Sup. Ct. 169, at page 50 the court said:

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will . . . of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances." Citing *Munn v. Illinois,* 94 U. S. 113, 134; *Martin v. P. & L. E. R. Co.* 203 U. S. 284, 294, 27 Sup. Ct. 100; *The Lottawanna,* 21 Wall. 558, 577; *Western Union T. Co. v. Commercial M. Co.* 218 U. S. 406, 417, 31 Sup. Ct. 59.

Moreover, as before observed, the legislature has the right, within constitutional bounds, to fix rates, and a remedy by action against the railroad commission is preserved in favor of any aggrieved party, so the rights of all parties are well guarded under the law. Ch. 362, Laws of 1905; *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905.

It is further contended that because one Schneider, doing business under the name of Schneider Ice Company, complained to the railroad commission in accordance with sec. 1797—37m, Stats., and after a hearing was had in accordance with sec. 12, ch. 362, Laws of 1905, obtained a reduction of the rate in the future from Merton to the Chestnut street yards over defendant's railroad from three cents to two and one-half cents per hundred pounds of ice, which rate went into effect September 24, 1909, the appellant is entitled to recover one half cent per hundred pounds excessive rate. This contention cannot be sustained. The effect of such a rule would be to bind the railroad company without its day

in court.  The rates charged the appellant were the schedule and lawful rates when charged, and the fact that a stranger had obtained a reduction of rates in a proceeding by him before the railroad commission at a later date, even in the same district, cannot bind the railroad in a proceeding or action by another shipper for reparation on account of excessive charges.  This doctrine has been laid down respecting the interstate commerce commission on complaint of a shipper. *Nat. P. Co. v. C. & N. W. R. Co.* 200 Fed. 185, and cases there cited.

It follows that the order below must be affirmed.

*By the Court.*—The order of the court below is affirmed.