TESCH and others, Appellants, vs. BOARD OF DEPOSITS OF WISCONSIN and another, Respondents.

*March 12—April 15, 1941.*

528

For the appellants there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, *Chas. W. Babcock,* first assistant city attorney, and *Werner A. Wilking,* assistant city attorney, and oral argument by *Mr. Babcock* and *Mr. Wilking.*

For the respondents there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, for the Board of Deposits of Wisconsin, and by *Miller, Mack & Fairchild* and *Paul R. Newcomb,* all of Milwaukee, for the First Wisconsin National Bank of Milwaukee, and oral argument by *Mr. Resh* and *Mr. Newcomb.*

FAIRCHILD, J.  In 1921 an act of the legislature (ch. 589, Laws of 1921) created an annuity and benefit fund for Milwaukee policemen, their wives and children.  That act established the plaintiff board and provided: That certain amounts specified be deducted from the pay of the policemen; that an assessment be levied by Milwaukee at a rate not to exceed five tenths of a mill on the dollar; and that the money resulting be invested and paid out under specified terms and conditions.  Par. 8 of sec. 1, ch. 589, Laws of 1921, provides that the city treasurer is to be custodian of the annuity and benefit fund and shall furnish a bond to secure against loss.  Under that law Milwaukee has contributed approximately $2.85 for every $1 deducted from policemen's salaries.

At all times in question such fund has been deposited with the defendant bank in an account called "City of Milwaukee, Policemen's Annuity and Benefit Fund, —— ——, Treasurer."

Experience during depression years led to a desire that public deposits in banks be insured against loss. Stabilization of the state bank system, in so far as public deposits are concerned, was attempted in ch. 1, Laws of Sp. Sess. 1931, now ch. 34, Stats. A basis was laid in that law for a state deposit-guarantee fund, contributions for which were to be sent in quarterly by public depositories from the public funds deposited with them, and the defendant Board of Deposits was created to administer this deposit-guarantee fund. Applicable portions of that statute follow:

Sec. 34.01, Stats., provides:

"(1) 'Public deposit' shall mean moneys deposited by the state or any county, city, village, town, drainage district, power district, school district, sewer district, or any commission, committee, board or officer of any governmental subdivision of the state, or any court of this state, in any state bank, savings and trust company, mutual savings bank, or national bank in this state, including private funds held in trust by a public officer for persons, corporations or associations of individuals."

"(5) 'Public moneys' shall include all moneys coming into the hands of the state treasurer or the treasurer of any county, city, village, town, drainage district, power district, school district, sewer district, or of any commission, committee, board or officer of any governmental subdivision of the state, or the clerk of any court in this state, by virtue of his office without regard to the ownership thereof."

It is the duty of every treasurer under sec. 34.05 (3), Stats., to deposit the funds received by him by virtue of his office in the name of the municipality in the public depository or depositories designated by the governing board. Provision is also made that every bank receiving or having any public funds on deposit shall pay quarterly into the state

deposit fund at a rate per year to be fixed on the daily average balance of such deposits, such sums to be collected by the depository from the depositors. Sec. 34.08 (2). When the amount required to be paid in is greater than the interest earned on such public deposits, the statute provides the difference may be deducted from the principal.

The money here involved is considered a "public deposit" within sec. 34.01 (1), Stats., because it was deposited by a commission or board or officer of a governmental subdivision of this state. Were it a private fund held in trust, it would still fall into this classification. There is no question but what this fund was money coming into the hands of the city treasurer by virtue of his office. The duty as custodian is coupled with the office of the city treasurer. Therefore, the fund constitutes "public moneys" as defined by sec. 34.01 (5).

A survey of the whole act indicates a purpose to set up a fund which shall bear its own expenses and likewise participate in the cost of the state deposit-guarantee fund. That a separate bond for the city treasurer is required by the statute is an example of that fact, and not an indication the city treasurer does not receive the money in his official capacity. All fees and charges incidental to the procuring and giving of such bond must be paid by the retirement board. Milwaukee was not to bear that burden directly. Separate bond requirements then do not divorce this fund from a status as a "public fund."

Besides the above definitions which indicate the fund in question is a public fund, there are other factors pointing to that same conclusion. It is axiomatic that a municipal corporation cannot constitutionally assess and collect taxes for a private purpose. Collection of the fund is authorized by a public law; it is paid to a public officer; it is held in trust by him and by the board for whom he acts as custodian; it is deposited in a public depository; and although not usable for general governmental expense, is nevertheless a public fund. Although the persons named as beneficiaries in the law itself

are the only persons who can participate in the enjoyment of these funds, the statute is not rendered unconstitutional. Similar provision in the case of the teachers' retirement law have been considered constitutional.

We conclude, therefore, that the fund is a public fund and subject to contribute to the state deposit-guarantee fund under sec. 34.08 (2), Stats. *Storen v. Sexton,* 209 Ind. 589, 200 N. E. 251, 254; 104 A. L. R. 1359; *In re Goodwin* (6th Cir.), 57 Fed. (2d) 31; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954. At page 50 of the case last above cited it is said: "Such amounts are no less public money after such payment than before. That would seem plain as an original proposition, but has received sanction by the highest authority . . . in *Pennie v. Reis,* 80 Cal. 266, 22 Pac. 176, carried to the supreme court of the United States, and the decision there reported in 132 U. S. 464, 10 Sup. Ct. 149."

Ch. 34, Stats., does not create a tax, but an exaction made under the police power. *State ex rel. Atty Gen. v. Wisconsin Constructors,* 222 Wis. 279, 289, 268 N. W. 238. Hence there can be no claim that it violates the uniformity of taxation clause in the Wisconsin constitution. (Sec. 1, art. VIII.) The constitutional tests are whether the action was in a legitimate field for the exercise of police power to promote the public welfare, and whether the means bear a reasonable relation to that end. *State ex rel. Carter v. Harper,* 182 Wis. 148, 152, 196 N. W. 451; *Purity Extract Co. v. Lynch,* 226 U. S. 192, 201, 33 Sup. Ct. 44, 57 L. Ed. 184.

The contention that the law is unconstitutional by reason of an unwarranted delegation of legislative power has no merit. The defendant bank had only a ministerial duty to collect from the depositor and pay over to the defendant Board of Deposits. No discretion was vested in the bank; it could do nothing but follow the explicit terms of the statute. As to the question of whether sufficient standards for determining how much is collectible for the state deposit fund, we are of the opinion that the standard set out in sec. 34.03

(d), Stats., namely, "that the state deposit fund should have sufficient reserves to enable it to promptly pay all losses likely to occur," meets the constitutional requirements. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 161, 116 N. W. 905; *Frank A. Graham Ice Co. v. Chicago, M. & St. P. R. Co.* 153 Wis. 145, 150, 140 N. W. 1097; *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 510, 220 N. W. 929.

*By the Court.*—Judgment affirmed.