STATE EX REL. ATTORNEY GENERAL and another, Petitioners, vs. WISCONSIN CONSTRUCTORS, INC., and others, Respondents.

*June 22—June 29, 1936.*

280

For the petitioners there was a brief by the *Attorney General, Fred M. Wylie,* special counsel, *C. J. Marsh,* counsel for the Trade Practice Commission, and *C. H. Crownhart, Jr.,* assistant counsel, both of Madison, and oral argument by *Mr. Wylie, Mr. Marsh,* and *Mr. Crownhart.*

For the respondents there was a brief by *Nolan, Dougherty, Grubb & Ryan* and *John T. Roethe,* all of Janesville, *Rouiller, Dougherty, Arnold & Kivett, John M. O'Brien,* and *Charles H. McDonald,* all of Milwaukee, *Sanborn, Blake & Aberg* of Madison, and *Barber, Keefe, Patri & Stillman* of Oshkosh, and oral argument by *Mr. Suel O. Arnold, Mr. William H. Dougherty,* and *Mr. O'Brien.*

As *amici curiæ, Joseph A. Padway* of Milwaukee, counsel for the Wisconsin Federation of Labor, *Carl B. Rix* of Milwaukee, counsel for the Committee of Automobile Dealers, *Joseph G. Konop* of Milwaukee, counsel for the Master Builders Association of Wisconsin, *George R. Currie* of Sheboygan, counsel for the Wisconsin Bottlers of Carbonated Beverages, *Leonard C. Fons* of Milwaukee, counsel for the Wisconsin Tavern Keepers Association, and *Randolph Conners* of Madison, counsel for the Madison Chapter of Wisconsin Council of Master House Painters & Decorators.

NELSON, J.  It may be well to state at the outset that we shall adhere to our determination to pass only upon the constitutionality of sec. 110.08 (1), Stats. 1935.  All questions as to the constitutionality of other sections of ch. 110, Stats. 1935, and all questions concerning certain code provisions (no code being now before us), are reserved for future determination.

Sec. 110.08 (1) is as follows:

"Every code prescribed or approved by the governor shall contain provisions for assessing against and collecting from

all persons, firms and corporations subject to the code, as employers, on a fair and equitable basis therein set forth, (a) assessments sufficient to reimburse the state for the expenses incurred by it in connection with the initial promulgation of the code and its administration, to be paid to the state treasurer at such times and upon such certifications by the governor as may be prescribed in said code; and (b) assessments sufficient to pay the expenses incurred by any code authority or administrative agency established by such code when covered by a budget of such code authority or administrative agency approved by the governor."

In view of the attacks made by the defendants upon sec. 110.08 (1), two questions require determination: (1) Has the legislature the power to assess persons engaged in certain businesses, occupations, or trades, the reasonable cost and expense of enforcing regulatory laws specifically applicable to them, the object of which laws is to destroy unfair methods of competition and unfair trade practices, assuming that the basis of the assessment is fair and equitable? (2) If so, was that power properly delegated to the governor by sec. 110.08 (1)?

This court, in *Petition of State ex rel. Attorney General* (*Tavern Code Authority Case*), 220 Wis. 25, 264 N. W. 633, held that ch. 110 did not unconstitutionally delegate legislative powers to the governor. That was the sole question decided. This court took original jurisdiction of that action for the sole purpose of determining that question only.

The court, speaking through Mr. Chief Justice ROSENBERRY said:

"The court assumed jurisdiction of this case upon the petition for the purpose of determining one question and one only, and that is, whether the act was invalid because of an unconstitutional delegation of legislative power to the governor and the agencies to be created by him."

The principal attack made upon ch. 110 at that time, and the only one which this court considered, was that the legislature had not set up sufficient standards in delegating to

the governor the power to prescribe or promulgate industrial codes.

The rule which this court consistently follows when considering laws passed by the legislature which are assailed on constitutional grounds is as follows:

The legislature, subject to the constitutions of the United States and of this state, is supreme in its particular field, and this court will not declare laws unconstitutional unless it clearly appears beyond reasonable doubt that they contravene constitutional provisions. See *Payne v. Racine,* 217 Wis. 550, 259 N. W. 437; *Petition of Breidenbach,* 214 Wis. 54, 252 N. W. 366; *Doering v. Swoboda,* 214 Wis. 481, 253 N. W. 657; *State ex rel. Carnation M. P. Co. v. Emery,* 178 Wis. 147, 189 N. W. 564, and the numerous earlier decisions cited therein. We approach the consideration of the question before us with that rule in mind.

A reading of ch. 110 impels the conclusions, (1) that the legislature enacted that chapter as an emergency measure for the purpose of meeting or ameliorating economic conditions which had arisen as a result of the depression; and (2) that in so doing it sought to promote the public welfare in the exercise of its police power. Whether the legislature acted wisely in enacting ch. 110 presents a question with which this court is not concerned.

Has the legislature the power to assess persons engaged in certain businesses, occupations, or trades, the reasonable cost and expense of enforcing regulatory laws specifically made applicable to them, the object of which laws is to destroy "unfair methods of competition and unfair trade practices," assuming that the basis of the assessment is fair and equitable?

If the legislature has not that power, it obviously cannot delegate it. While no attempt has been made by the legislature itself to exercise that specific power, that fact does not warrant, much less impel, the conclusion that the legislature

does not possess that power. The power of the legislature to license peddlers, pawnbrokers, real-estate brokers, barbers, bakers, etc., and to exact from them license fees, providing such fees do not unreasonably exceed the cost of inspection and regulation, and providing such license fees are not directed to the purpose of raising general revenue, is not now subject to question.

The power of the legislature to exact from public utility companies, insurance companies, and banks the cost and expense of examinations has likewise been sustained. *Wisconsin Telephone Co. v. Public Service Comm.* 206 Wis. 589, 240 N. W. 411.

Fees for inspecting kerosene, gasoline, etc., for the purpose of covering the expense of such inspection, have been sustained. *Wadhams Oil Co. v. Tracy,* 141 Wis. 150, 123 N. W. 785.

Upon principle, the power to exact license fees, fees for examining banks, insurance companies, and public utilities, fees to cover the expense of inspection in aid of regulation deemed necessary by the legislature, is not essentially different from the power to assess against industries that are subject to a valid code the expenses of promulgating, administering, and enforcing codes or standards of unfair methods of competition and unfair trade practices. Whether a particular imposition or exaction is called a license fee, inspection fee, examination fee, or a regulatory fee is not important. If the exaction is in aid of regulation and for the purpose of eradicating abuses, in the interest of public welfare, and bears a reasonable relation to the end sought to be accomplished, there can be no serious question as to the power of the legislature to impose it. Without prolonging the discussion, it is our opinion that the legislature has the power to impose upon businesses, occupations, and trades, subjected by it to valid codes, the reasonable cost and expenses of administering and enforcing them.

Was the power, which we hold the legislature possesses, properly delegated to the governor by sec. 110.08 (1) ?

The power of the legislature to delegate to administrative officers or boards powers which are legislative is now generally conceded to be proper, if the legislature first declares the policy and sets up sufficient standards for the guidance of the administrative officer or board. *State ex rel. Wis. Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929. As was said by the supreme court of the United States in *A. L. A. Schechter Poultry Corp. v. United States,* 295 U. S. 495, 55 Sup. Ct. 837, 843, 97 A. L. R. 947:

"We have repeatedly recognized the necessity of adapting legislation to complex conditions involving a host of details with which the national legislature cannot deal directly. We pointed out in the *Panama Co. Case* that the constitution has never been regarded as denying to congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply."

With that statement this court is in accord. *State ex rel. Wis. Inspection Bureau v. Whitman, supra.*

The powers delegated to the industrial commission under the safe-place statute and to other commissions to promulgate rules, etc., having the force of law, illustrate to what extent the legislature is permitted under the constitution to delegate powers to administrative boards or commissions. As already pointed out, this court, in the *Tavern Code Authority Case, supra,* upheld the power of the legislature to delegate to the governor the power to promulgate codes or standards of unfair methods of competition and unfair trade practices in business; the legislature having declared the policy to be subserved and set up sufficient standards. This court, however, did not then specifically consider whether the legislature had

or had not delegated to the governor the power to assess the members of an industry, subjected to a properly promulgated and valid code.

Assuming that the legislature did delegate that power to the governor, we perceive no difference between delegating to the governor the power to prescribe codes for certain industries pursuant to the policy declared by the legislature and the standards set up by it, and delegating to the governor the power to make assessments after finding the facts upon which the assessment is based; that is to say, the amounts "sufficient to reimburse the state for the expenses incurred by it in connection with the initial promulgation of the code and its administration," and "sufficient to pay the expenses incurred by any code authority or administrative agency established by such code when covered by a budget of such code authority or administrative agency approved by the governor." It is our opinion, assuming that the legislature intended to delegate that power, that a sufficient legislative standard was set up by the legislature for the governor's guidance in imposing assessments by the language, "sufficient to reimburse the state for the expenses incurred," etc., "sufficient to pay the expenses incurred by the code authority or administrative agency," etc., and "on a fair and equitable basis." But, in our opinion, the legislature itself levied the assessment, leaving to the governor the determination of the amount to be levied after ascertaining the facts. Sec. 110.08 (1) provides:

"Every code prescribed or approved by the governor shall contain provisions for assessing," etc.

We express no opinion as to the validity of any particular assessment because no such question is here at this time. Assuming, (1) that the governor has prescribed or promulgated a code or standards of unfair methods of competition and unfair trade practices for the mason, concrete

and carpenter contractors' industry; (2) that in so doing he fully complied with the statutory prerequisites as to investigation, notice of hearing, etc.; (3) that the code so promulgated complies with the provisions of ch. 110, as construed by this court in *Petition of State ex rel. Attorney General, supra;* (4) that that code contains provisions for assessing on a fair and equitable basis all persons, firms, and corporations subject to that code; (5) that the assessments so made are sufficient to reimburse the state for the expenses incurred by it in connection with the initial promulgation of that code and its administration; and (6) that the assessments are based on a budget approved by the governor and are sufficient to pay the reasonable expenses incurred by the governor and the Wisconsin trade practice commission; assuming all of these things the assessment would be valid.

One other question may properly be considered. The answer of the defendant admits that in the letter (hereinbefore referred to as the bulletin) sent out by Wisconsin Constructors, Inc., to its members, it advised them that in the opinion of its counsel the assessment made in the code to which they were subject "could not be collected for the reason that it is an attempt to vest in an appointive administrative agency the power to tax." The defendants contend that the assessments imposed upon them and other members of their industry pursuant to the provisions of sec. 110.08 (1) are taxes, and that the legislature cannot delegate to the governor the power to tax. A sufficient answer to that contention is that assessments imposed under the codes are not taxes. They are not, strictly speaking, license fees, inspection fees, or examination fees, although they partake of the nature of both, in that their purpose is to provide funds with which to pay the cost and expenses of administration, inspection, and regulation. They may, for want of a better name, be called regulatory or enforcement fees. The distinction between taxes and fees is quite clear. "Taxes," it was said in *Fitch v.*

*Wisconsin Tax Comm.* 201 Wis. 383, 230 N. W. 37, "are
the enforced proportional contributions from persons and
property, levied by the state by virtue of its sovereignty for
the support of government and for all public needs.   The
state demands and receives them from the subjects of taxa-
tion within its jurisdiction that it may be enabled to carry
into effect its mandates and perform its manifold functions,
and the citizen pays from his property the portion demanded,
in order that, by means thereof, he may be secured in the
enjoyment of the benefits of organized society." Taxes must
rest on a state-wide constitutional purpose and must fall
within the constitutional scope of the term "expenses of
state," as used in sec. 5, art. VIII, of the constitution.  *State
ex rel. Owen v. Donald,* 160 Wis. 21, 151 N. W. 331.  Taxes
are imposed for the purpose of general·revenue.   License and
other fees are ordinarily imposed to cover the cost and ex-
pense of supervision or regulation.   *Milwaukee v. Milwau-
kee E. R. & L. Co.* 147 Wis. 458, 133 N. W. 593.   See also
*Head Money Cases,* 112 U. S. 580, 5 Sup. Ct. 247; *United
States v. Butler* (AAA decision), 297 U. S. 1, 56 Sup. Ct.
312.   The distinction between a tax and an imposition under
the police powers is well stated in 4 Cooley, Taxation
(4th ed.), p. 3511:

"The distinction between a demand of money under the
police power and one made under the power to tax is not so
much one of form as of substance.   The proceedings may be
the same in the two cases, though the purpose is essentially
different.   The one is made for regulation and the other for
revenue.   If the purpose is regulation the imposition ordi-
narily is an exercise of the police power, while if the purpose
is revenue the imposition is an exercise of the taxing power
and is a tax.   If, therefore, the purpose is evident in any
particular instance, there can be no difficulty in classifying
the case and referring it to the proper power. . . .

(p. 3513) "Only those cases where regulation is the pri-
mary purpose can be specially referred to the police power.
If revenue is the primary purpose and regulation is merely

incidental the imposition is a tax; while if regulation is the primary purpose the mere fact that incidentally a revenue is also obtained does not make the imposition a tax, although if the imposition clearly and materially exceeds the cost of regulation, inspection or police control, it is generally held to be a tax or an illegal exercise of the police power. . . .

(p. 3528) "The power of a state to require a license fee in the exercise of the police power is inherent, subject to the limitations upon the police power in general and to any constitutional limitations which may exist; but constitutional limitations on the power to tax have no application." (Citing *State v. Anderson,* 144 Tenn. 564, 234 S. W. 768, 19 A. L. R. 180.)

Fees exacted from public utilities, banks, and insurance companies for examinations are ordinarily measured by the amount of time required to make such examinations, while the assessments here considered are required to be made upon a fair and equitable basis, and obviously with due regard to the reasonable necessity of incurring the expense upon which the assessments are based. Including in the assessment the reasonable initial cost of promulgating a particular code is, in our opinion, subject to no constitutional objection.

*By the Court.*—For the reasons stated, it is adjudged and declared that sec. 110.08 (1) is constitutional.

FAIRCHILD, J., dissents.