CITY OF MILWAUKEE, Respondent, v. HOFFMANN, Appellant.

*November 4—November 30, 1965.*

For the appellant there was a brief and oral argument by *Robert J. Hoffmann* of Milwaukee, *pro se*.

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Patrick J. Madden,* assistant city attorney, and oral argument by *Mr. Madden.*

GORDON, J.    So far as this meager record permits, we will examine the two theories which were relied upon by

the county court and rejected by the circuit court. First, the county court ruled that sec. 101–135 of the Milwaukee Code of Ordinances was unenforceable by reason of the failure of the city to comply with the sign-posting provisions of sec. 349.13 (1), Stats. Secondly, the county court determined that such ordinance was unconstitutional because it was designed to produce revenue.

*The Posting of Signs.*

Sec. 349.13 (1), Stats., provides in part that "no prohibition, limitation or restriction on parking imposed pursuant to this section is effective unless official traffic signs or markers or parking meters have been placed or erected indicating the particular prohibition, limitation or restriction."

In its ruling that the city had failed to comply with this provision of the statutes, the county court noted that "no signs were erected in the block or on the highway in question where this defendant parked his automobile." The city urges that sec. 349.13 (1), Stats., does not govern where there is a general restriction on overnight parking which is applicable to an entire city. The circuit court declined to pass on this issue, noting that "the question is not squarely presented from the facts adduced at the trial."

While the circuit court also relied on the fact that Mr. Hoffmann "at all times knew of the existence of the ordinance and its application to him at the time of the admitted excessive parking without permit," we believe that the circuit court's ruling is correct because the record is vague on this issue.

The police officer who ticketed the defendant's vehicle testified as follows on this question:

"*Q.* Officer, are you familiar with the fact that the City of Milwaukee has posted various locations on the streets indicating the restrictions on night parking? *A.* Yes, sir.

"*Q.* You are familiar with that? *A.* I have seen a number of them.

"*Q.* Yes, and they cover the particular violation for which you issued the ticket to the defendant? *A.* As far as I know, yes, sir."

When the defendant, Mr. Hoffmann, was called to testify, he was asked, "Have you seen these signs that the officer speaks of?" He responded, "No, I haven't," and then added, "I haven't seen the signs, I was told."

The only other reference to the posting of traffic signs was contained in a statement by Mr. Hoffmann when the county court asked if there was anything else he wished to say. At that point, Mr. Hoffmann stated that he had called the police station and told them that "there is no signs up there."

This court has said that an "ordinance is entitled to every presumption in favor of its validity." *Highway 100 Auto Wreckers v. West Allis* (1959), 6 Wis. (2d) 637, 646, 96 N. W. (2d) 85, 97 N. W. (2d) 423. In *Dyer v. City Council of Beloit* (1947), 250 Wis. 613, 616, 27 N. W. (2d) 733, we stated with reference to an ordinance of a municipal corporation:

". . . every intendment is to be made in favor of the lawfulness and reasonableness of such ordinance."

Accordingly, it must be presumed that sec. 101–135 of the Milwaukee Code of Ordinances was valid and was regularly placed into operation. The challenge to the regularity contained in this record is so scant that a finding of invalidity on the part of the trier of fact would be against the great weight and clear preponderance of the evidence.

*The Challenge to Constitutionality.*

Sec. 101–135 of the Milwaukee Code of Ordinances had been in effect for approximately fourteen years. The determination of the county court that the ordinance was unconstitutional was made at a summary proceedings;

one litigant was not even represented by counsel, and the other side protested that it was not ready for trial. The court announced its decision without the benefit of briefs and without the rendition of a written opinion. There is applicable to the county court's determination of unconstitutionality the admonition stated by this court in *State v. Stehlek* (1953), 262 Wis. 642, 645, 56 N. W. (2d) 514:

"The authorities are to the effect that unless it appears clearly beyond a reasonable doubt that the statute is unconstitutional, it is considered better practice for the court to assume the statute is constitutional, until the contrary is decided by a court of appellate jurisdiction. That is especially true where, as in this case, the statute has been in effect for nearly eight years, and has been enforced in innumerable cases."

In reviewing the county court's order, the circuit court upheld the authority of the city to enact an ordinance which restricts night parking on certain streets even though such ordinance also requires the purchase of permits for such parking. The circuit court considered the ordinance a reasonable exercise of the city's police power, and it noted that the validity of the ordinance had been upheld in an earlier ruling made by the circuit court for Milwaukee county in 1954 (*Toepfer v. City of Milwaukee*, Case No. 244–011).

There was no evidence of any sort adduced at the trial regarding Mr. Hoffmann's claim that the ordinance is unconstitutional. Our ruling, therefore, must be based upon the language of the ordinance in relation to the state and federal constitutions. Mr. Hoffmann has not referred this court to any specific constitutional provisions, and we presume that he is relying upon the Fourteenth amendment to the United States constitution, sec. 1, art. I of the Wisconsin constitution, or sec. 1, art. VIII of the Wisconsin constitution.

The city accepts the proposition that the police power must not be employed for the primary purpose of raising

revenue but rather must be designed to promote the public welfare. The city urges, however, that the objective of the instant ordinance is consonant with the city's prerogatives under the police power.

In our opinion, the city of Milwaukee, pursuant to sec. 62.11 (5), Stats., has the authority to regulate parking on city streets. Sec. 62.11 (5) provides as follows:

"Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

In creating sec. 101–135, we do not believe that the city has attempted to enact a general revenue measure but has instead invoked a reasonable technique for the regulation of night parking on its streets. In regulating such parking, the ordinance accomplishes important public goals which are consistent with the city's obligation under the police power to protect the health, safety, and welfare of its citizenry. The charging of a reasonable fee does not corrupt the otherwise constitutional purposes of the ordinance.

This court has previously examined the question of the constitutional propriety of imposing license fees. In *State ex rel. Attorney General v. Wisconsin Constructors* (1936), 222 Wis. 279, 289, 268 N. W. 238, appears the following:

"The distinction between a tax and an imposition under the police powers is well stated in 4 Cooley, Taxation (4th ed.), p. 3511:

" 'The distinction between a demand of money under the police power and one made under the power to tax is

not so much one of form as of substance. The proceedings may be the same in the two cases, though the purpose is essentially different. The one is made for regulation and the other for revenue. If the purpose is regulation the imposition ordinarily is an exercise of the police power, while if the purpose is revenue the imposition is an exercise of the taxing power and is a tax. If, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case and referring it to the proper power. . . .

"(p. 3513) 'Only those cases where regulation is the primary purpose can be specially referred to the police power. If revenue is the primary purpose and regulation is merely incidental the imposition is a tax; while if regulation is the primary purpose the mere fact that incidentally a revenue is also obtained does not make the imposition a tax, although if the imposition clearly and materially exceeds the cost of regulation, inspection or police control, it is generally held to be a tax or an illegal exercise of the police power. . . .'"

This problem was also considered in *Tesch v. Board of Deposits* (1941), 237 Wis. 527, 532, 297 N. W. 379, where this court stated as follows:

"Ch. 34, Stats., does not create a tax, but an exaction made under the police power. *State ex rel. Atty. Gen. v. Wisconsin Constructors*, 222 Wis. 279, 289, 268 N. W. 238. Hence there can be no claim that it violates the uniformity of taxation clause in the Wisconsin constitution. (Sec. 1, art. VIII.) The constitutional tests are whether the action was in a legitimate field for the exercise of police power to promote the public welfare, and whether the means bear a reasonable relation to that end. *State ex rel. Carter v. Harper*, 182 Wis. 148, 152, 196 N. W. 451; *Purity Extract Co. v. Lynch*, 226 U. S. 192, 201, 33 Sup. Ct. 44, 57 L. Ed. 184."

A similar approach was stated by the supreme court of Tennessee in *State v. Anderson* (1920), 144 Tenn. 564, 574, 234 S. W. 768, where the court said:

" 'Thus when the legislature desires to place some limit upon the number of people who will engage in a particular occupation, which if carried on without restraint as to numbers will be injurious to the public welfare, or wishes

to restrict the frequency with which some act will be performed, without prohibiting it altogether, it often imposes a charge or fee upon those engaging in the occupation or performing the act. If the primary purpose of the legislature in imposing such a charge is to regulate the occupation or the act, the charge is not a tax, even if it produces revenue for the public.' "

*By the Court.*—Order affirmed.