CITY OF MILWAUKEE, Plaintiff-Respondent-(In T.Ct.)-
Appellant,

v.

Chet N. KILGORE, Defendant-Appellant-(In T.Ct.)-
Respondent,

Matthew J. TREWHELLA, Scott B. Patterson, Ralph N.
Ovadal, Daoud Faraj, Robert C. Braun, Wayne E.
Rohde and All Others Similarly Situated, Plaintiffs-
Respondents,†

v.

Ronald R. FIEDLER, Secretary, Department of Trans-
portation of State of Wisconsin, Honorable William J.
Panagis, Honorable Stanley A. Miller and Honorable
James A. Gramling, Jr. Judges of Municipal Court of
City of Milwaukee and City of Milwaukee,
Defendants-Appellants.

Court of Appeals

*No. 92–0949. Submitted on briefs May 4, 1993.—Decided May
17, 1994.*

(Also reported in 517 N.W.2d 689.)

†Petition to review granted.

499

500

For the plaintiff-respondent-(In T.Ct.)-appellant there were no briefs filed.

For the defendant-appellant-(In T.Ct.)-respondent there were no briefs filed.

For the defendant-appellant, City of Milwaukee, the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *Rudolph M. Konrad*, deputy city attorney.

For the defendant-appellant, Ronald R. Fiedler, the cause was submitted on the briefs of *James E. Doyle, Jr.*, attorney general, and *Stephen J. Nicks*, assistant attorney general.

For the plaintiffs-respondents the cause was submitted on the briefs of *Richard F. Tyson* of Milwaukee.

Amicus Curiae brief was filed by *Claire Silverman* of *League of Wisconsin Municipalities* of Madison, WI.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J. Two related issues are presented in this appeal: (1) whether municipal court judges have statutory authority to order the suspension of drivers' licenses for failure to pay forfeitures for non-traffic related offenses; and (2) if they do, whether that statutory authority is constitutional. The trial court concluded that the statutes do not provide such authority and that, even if they do, the statutes are unconstitutional. We conclude, however, that under

504

§§ 800.09 and 800.095, STATS.,[1] municipal court judges do have such authority and, further, that the statutory authority is constitutional. Therefore, we reverse.

## I. BACKGROUND

The relevant facts in these appeals are undisputed. On February 23, 1990, Chet A. Kilgore was found guilty of disorderly conduct, in violation of § 106-1 of the Milwaukee Code of Ordinances.[2] A City of Milwaukee municipal judge ordered him to pay a forfeiture of $109 and further ordered that for nonpayment by April 24, 1990, his driver's license would be suspended for five years. In a trial *de novo* in state circuit court Kilgore contended:

 1. Such suspension violates the prohibition in Sec. 343.30(5) which provides in part:

 "No court may suspend or revoke an operating privilege except as authorized by this chapter or chapters 48, 345 or 351."

 2. Coercing payment of forfeitures by suspension in nontraffic cases is not a lawful use of the police power, and violates the Fifth and Fourteenth

---

 [1] We refer to the 1989-90 version of the Wisconsin statutes. The relevant statutes in this opinion have subsequently been amended.

 [2] Section 106-1 of the City of Milwaukee Code of Ordinances in effect at the time stated:

 **Disorderly conduct.** Whoever does any of the following may be fined not more than $200: in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance.

 The maximum fine allowed under this ordinance has been increased to $500, effective August 13, 1993.

Amendments to the United States Constitution, and Article I, Section 1, of the Wisconsin Constitution.

3. There being no nexus between the alleged offense and the suspension, nor any proportion between the gravity of the offense and the effect of the suspension, the procedure violates due process, and constitutes cruel and unusual punishment and an excessive penalty. Thus it violates the Fifth, Fourteenth and Eighth Amendment[s] to the United States Constitution, and Article I, Section 6, of the Wisconsin Constitution.

4. Insofar as Sections 800.09 and 800.095 attempt to confer power of suspension for nonpayment of forfeitures upon Municipal Courts, they constitute an unlawful delegation of power, contravening the provisions of Article VII, Section 14, of the Wisconsin Constitution, which authorizes the creation of such courts, and limits their jurisdiction to actions and proceedings "arising under ordinances of the municipalities in which established."

On October 23, 1989, Matthew J. Trewhella was found guilty of disorderly conduct. A municipal judge ordered him to pay $109 and further ordered that for nonpayment by December 21, 1989, his driver's license would be suspended for five years.[3] Trewhella, together with respondents Scott G. Patterson, Ralph N. Ovadal, Daoud Faraj, Robert C. Braun, Wayne E. Rohde,[4] and "all others similarly situated" commenced

[3] In Trewhella's case, the municipal court judgment docket recorded a suspension order for 825 days. We assume this was a typographical error because all the other docket sheets in this appellate record reflect suspension periods of 1825 days — the equivalent of five years.

[4] On April 9,1990, Patterson was found guilty of disorderly conduct and ordered to pay $109, plus costs. On February 13,

a class action lawsuit against Ronald R. Fiedler, Secretary of the Wisconsin Department of Transportation, and against the City of Milwaukee and three of its municipal judges. Their actions sought declaratory and injunctive relief to prohibit suspension of drivers' licenses for nonpayment of forfeitures arising from non-traffic related offenses.

The respondents all received orders of suspension from the Wisconsin Department of Transportation"Division of Motor Vehicles stating that their drivers' licenses had been suspended for five years for failure to pay the forfeitures for non-traffic charges. The orders of suspension stated that the period of suspension "can be reduced by payment of the forfeiture." According to the record, respondents did not pay the forfeitures and did not seek to avoid suspension of their operating privileges for good cause or because of indigency. *See* § 800.095(4)(a), STATS.

In their class action, the respondents claimed that municipal courts are precluded from suspending operating licenses for nonpayment of forfeitures for violations of non-traffic city ordinances under § 343.30(5), STATS. They also claimed that the orders were unconstitutional as: (1) improper debt collection measures and improper exercises of police power in

---

1990, Ovadal was found guilty of disorderly conduct and ordered to pay $160, plus costs. On May 4, 1990, Faraj was found guilty of disorderly conduct and ordered to pay $109, plus costs. On January 8, 1990, Braun was found guilty of trespassing in violation of § 110-10 of the City of Milwaukee Code of Ordinances and ordered to pay $25, plus costs. On April 19, 1990, Rohde was found guilty of disorderly conduct and ordered to pay $109, plus costs. All the respondents were informed that should they fail to pay within 60 days, their drivers' licenses would be suspended for 1,825 days.

507

violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 1, of the Wisconsin Constitution; (2) unreasonable exercises of police power, because "there is neither any nexus nor any proportion between the offenses charged, the harm to the public, the maximum amount of the forfeitures authorized by the ordinances, and the duration and severity of the suspensions," in violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 1 of the Wisconsin Constitution; (3) excessive penalties in violation of the Eighth and Four-teenth Amendments to the United States Constitution, and Article I, Section 6 of the Wisconsin Constitution; and (4) unlawful delegations of power to municipal courts in violation of Article VII, § 14 of the Wisconsin Constitution.[5]

---

[5] The Fifth Amendment to the United States Constitution, in part, states no person shall "be deprived of life, liberty, or property, without due process of law."

The Fourteenth Amendment states that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article I, § 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article I, § 6 of the Wisconsin Constitution is virtually identical.

On June 6, 1991, the trial court ordered consolidation of the Kilgore and Trewhella cases. All the respondents moved for summary judgment. The City, on behalf of the Milwaukee municipal judges, and the Attorney General, on behalf of the Department of Transportation, also moved for summary judgment.

The trial court granted summary judgment for the respondents, declaring: (1) § 343.30(5), STATS., precludes municipal court authority to suspend drivers' licenses as otherwise provided under §§ 800.09 and 800.095, STATS.; (2) § 755.045, STATS., defines municipal court jurisdiction and provides no authority to suspend drivers' licenses; and (3) the legislature, by "enacting § 800.09(1)(c) and § 800.095 and amending § 800.09(1)(a) Wis. Stats., unlawfully used its police power for the primary purpose of raising revenue and not to promote the public welfare." Thus, the trial court concluded:

> IT IS ORDERED that §§ 800.09(1)(a) & (c) Wis. Stats and § 800.095 Wis. Stats., as they confer municipal judges the authority to suspend operating privileges for the failure to pay non-traffic forfeitures, is declared unconstitutional as an abuse of police power, a violation of the municipal courts jurisdiction, and a violation of due process.

The trial court ordered reinstatement of the driver's license of each named party, ordered the Secretary of the Department of Transportation to reinstate

---

Article VII, § 14 of the Wisconsin Constitution, in part, provides:

> **Municipal court.** SECTION 14. . . . The legislature by law may authorize each city, village and town to establish a municipal court. All municipal courts shall have uniform jurisdiction limited to actions and proceedings arising under ordinances of the municipality in which established.

the drivers' licenses of all similarly situated persons, and enjoined the Secretary and the Milwaukee municipal judges from suspending drivers' licenses for nonpayment of forfeitures imposed for non-traffic related offenses. The parties stipulated to a partial stay of the judgment pending appeal, stating that "it would cost approximately $40,000 for the State to effect the reinstatement (none of which is recoverable) and an additional $40,000 to undo the reinstatement should the appeal be successful . . . [which] would not be recoverable either." The trial court ordered the stay.

## II. STATUTORY AUTHORITY

The statutes essential to our determination, in relevant part, state:

**800.09 Judgment; failure to appear; plea of guilty. (1)** JUDGMENT. If a municipal court finds a defendant guilty it may render judgment by ordering payment of a forfeiture .. . . If the judgment is not paid, the court may proceed under par. (a), (b) or (c) or any combination thereof, as follows:

(a) The court may defer payment of any judgment or provide for instalment payments. At the time the judgment is rendered, the court shall inform the defendant, orally and in writing, of the date by which payment of the forfeiture . . . must be made, and of the possible consequences of failure to make the payment in timely fashion, including imprisonment, as provided in s. 800.095, or suspension of the defendant's motor vehicle operating privilege, as provided in par. (c), if applicable.. . .

. . . .

(c) The court may suspend the defendant's operating privilege, as defined in s. 340.01(40), until the judgment and any restitution order under par. (a) is paid, if the defendant has not paid the judg-

ment and restitution within 60 days after the date on which payment is ordered under par. (a) and has not notified the court that he or she is unable to pay the judgment, as provided under s. 800.095(4)(a), except that the suspension period may not exceed 5 years. The court shall take possession of the suspended license and shall forward the license, along with a notice of the suspension clearly stating that the suspension is for failure to pay a forfeiture ordered by the court, to the department of transportation.

**800.095 Nonpayment of judgment or noncompliance with work order; further proceedings. (1)** NONPAYMENT OR NONCOMPLIANCE. If the defendant does not make payments in accordance with the order of the court under s. 800.09(1)(a) . . ., the court shall issue a warrant to arrest the defendant and bring him or her before the court or a summons ordering the defendant to appear in court, or both. The defendant may be incarcerated prior to the court appearance.

. . . .
 **(4)** HEARING; COURT ORDER. (a) If the defendant appears before the court pursuant to a warrant or summons issued under sub. (1) or the defendant otherwise notifies the court that he or she is unable to pay the judgment . . ., the court shall conduct a hearing. If the defendant failed to pay the forfeiture . . ., the court shall determine if the defendant is unable to pay the amount specified in the judgment for good cause or because of the defendant's indigence . . ..
 (b) If the defendant fails to appear before the court for a hearing conducted under par. (a) or if the court determines at a hearing under par. (a) that the failure of the defendant to pay the judgment is not for good cause or because of the defendant's

indigence . . ., the court shall order one of the following:

1. That the defendant be imprisoned until the amount is paid, except that the defendant reduces the amount owed at a rate of at least $25 for each day of imprisonment, including imprisonment following an arrest but prior to the findings under this subsection, and the maximum period of imprisonment is 90 days.

2. That the payment schedule or the amount of the judgment be modified, suspended or permanently stayed.

3. That the defendant perform community service work . . ..

4. That the defendant's operating privilege, as defined in s. 340.01(40), be suspended until the judgment and any restitution order under s. 800.09(1)(a) is paid, except that the suspension period may not exceed 5 years.

(c) If the court determines that the failure of the defendant to pay the judgment is for good cause or because of the defendant's indigence or that the failure of the defendant to comply with the work order is for good cause, the court may enter an order under par. (b) 2 or 3.

Pursuant to this statutory scheme, municipal court judges have regularly ordered the suspension of drivers' licenses for failure to comply with municipal court forfeiture orders.[6] The trial court concluded,

---

[6] According to a letter from the assistant court administrator of the City of Milwaukee Department of the Municipal Court dated February 27, 1991, submitted by the Respondent to the trial court, the Milwaukee municipal courts have suspended 467 drivers' licenses for failure to pay forfeitures in non-traffic violations by adult offenders in 1989; 688 in 1990; and 1,501 in 1991. Without attaching supporting documents, counsel for the Respondents stated in an affidavit, that according to a report by

however, that § 343.30(5), STATS., precludes the municipal courts from exercising that authority under the facts of these cases.

Section 343.30(5), STATS., in relevant part, provided:

> **343.30 Suspension and revocation by the courts.**
> . . . .
> (5) No court may suspend or revoke an operating privilege except as authorized by this chapter or ch. 48, 345 or 351 or s. 161.495.

The parties agree that, on its face, § 343.30(5), STATS., is clear. Respondents argue that by not including any reference to §§ 800.09 and 800.095, STATS., among its exceptions, § 343.30(5) precludes municipal court authority to suspend drivers' licenses under § 800.095(4)(b)4, STATS. Unquestionably, however, § 343.30(5) conflicts with §§ 800.09 and 800.095 because the latter statutes specifically authorize municipal courts to suspend drivers' licenses for failure to pay court-ordered forfeitures.

"[A]mbiguity can be created by the interaction of two separate statutes." *State v. Anderson*, 160 Wis. 2d 435, 439, 466 N.W.2d 681, 682 (Ct. App. 1991). Where statutes on the same subject conflict or are inconsistent, this court must make every effort to harmonize them in order to give effect to the purpose of each statute. *Rossie v. DOR*, 133 Wis. 2d 341, 351, 395 N.W.2d 801, 806 (Ct. App. 1986). In interpreting an ambiguous

the Wisconsin Department of Transportation, statewide the Department of Transportation has, for non-traffic violations, suspended 1,838 drivers' licenses in 1989, 12,305 in 1990; and 15,354 in 1991.

statute, a court "may insert words necessary or reasonably inferable to avoid an absurd result." *State v. Berndt*, 161 Wis. 2d 116, 123, 467 N.W.2d 205, 207 (Ct. App. 1991). We conclude, consistent with the legislative history and intent of those statutes, that the lack of reference in § 343.30(5), STATS., to §§ 800.09 and 800.095, STATS., was inadvertent and that the interpretation of § 343.30(5), STATS., must include the insertion of references to §§ 800.09 and 800.095 to avoid an absurd result.

Prior to the reorganization and renumbering of statutes in 1957, the provisions of § 343.30(5), were contained in § 85.08(42), STATS. (1955), which read:

> REVOCATION AND SUSPENSION BY COURTS. All operators' licenses ordered suspended or revoked by a justice of the peace or other court of competent jurisdiction shall be suspended or revoked in accordance with the provisions of this section.

The statute did not precisely define the violations for which suspension or revocation could follow, and thus it allowed the potential for suspension or revocation under unlimited circumstances as long as the suspension or revocation order was "in accordance with the provisions of this section." In 1957, however, the legislature modified the statute by including language that explicitly restricted suspensions and revocations to specific violations. Laws of 1957, ch. 260, § 1. The legislature continued to amend the law so that suspension or revocation could be employed as an incentive to comply with court orders, and as a punishment. Thus, § 343.30(5), STATS., came to include references to chapter 48 (the children's code), *see* Laws of 1979, ch. 300, § 99, chapter 345 (vehicles—civil and criminal liability), *see* Laws of 1973, ch. 218, § 16, chapter 351

514

(habitual traffic offenders), *see* Laws of 1979, ch. 333, § 2, and § 161.495, STATS., (controlled substances), *see* Laws of 1989, ch. 31, § 2577. As the legislature continued to enact suspension and revocation as an incentive for compliance with court orders or as a penalty for a variety of violations, it cross-referenced those provisions by including them in the exceptions listed in § 343.30(5).

In 1988, § 800.09(1)(a), STATS., was amended by 1987 Wis. Act 389 § 25 and 1987 Wis. Act 389 §§ 26 and 28, creating §§ 800.09(1)(c) and 800.095(4)(b)4. According to the undisputed summary provided in the *amicus* brief of the League of Wisconsin Municipalities, enactment of § 800.09, STATS., in 1987 stemmed from complaints of severe overcrowding in municipal jails, particularly in Milwaukee. The new procedures created by 1987 Wis. Act 389 gave municipal courts the additional option of suspending drivers' licenses for failure to pay court-ordered forfeitures if two factors were met: (1) the defendant had not paid the judgment within sixty days after payment was ordered; and (2) the defendant had not notified the court that he or she was unable to pay the judgment for good cause or because of indigence. Thus, the legislature provided municipal courts with the authority to enforce their orders without resorting to incarceration of countless defendants who did not pay their forfeitures. The legislature failed, however, to cross-reference these provisions to also include them among the exceptions listed in § 343.30(5), STATS.

The trial court concluded that because § 343.30(5), STATS., did not list §§ 800.09 and 800.095, STATS., among its exceptions, the municipal court had no authority to suspend drivers' licenses under

§§ 800.09(1)(c) and 800.095(4)(b)4. The purpose of each statute, however, logically compels our conclusion that the absence of any reference to § 800.09 or § 800.095 in § 343.30(5) can only have been the result of legislative inadvertence. To uphold the trial court's conclusion would allow § 343.30(5), to void substantial portions of §§ 800.09 and 800.095. Construing one statute to void others would make no sense and would lead to unreasonable and absurd results. "Courts must look to the common sense meaning of a statute to avoid unreasonable and absurd results." *NCR Corp. v. DOR*, 128 Wis. 2d 442, 456, 384 N.W.2d 355, 362 (Ct. App. 1986). Therefore, we conclude that municipal courts do have statutory authority to order the suspension of drivers' licenses for failure to pay court-ordered forfeitures for non-traffic related offenses.[7]

---

[7] We have no disagreement with respondents' reminder that the firmly established doctrine of *casus omissus* militates against appellate introduction of missing words in statutes even to correct an obvious legislative inadvertence. As the supreme court explained:

> This self-imposed rule of judicial restraint is equally applicable even where the omission was a mere oversight on the part of the legislature and where the statute would have been drawn otherwise had the legislature been cognizant of its omission.

*State ex rel. Reynolds v. Smith*, 22 Wis. 2d 516, 521, 126 N.W.2d 215, 217 (1964).

This case, however, is significantly distinguishable from *Smith*. In *Smith*, the court construed a statute dealing with the governor's authority to appoint state officers whose appointments required the consent of the state senate. The attorney general challenged the appointments made during a period of legislative recess because the same appointments had been rejected by the senate in its previous session. The supreme court acknowledged the attorney general's sound policy argument but would allow no exception to or deviation from the unambiguous

## III. CONSTITUTIONALITY

**A. Substantive Due Process.** The trial court also concluded that the authority conferred on municipal courts under §§ 800.09 and 800.095, STATS., was an unconstitutional exercise of the police power. The trial court was incorrect.

The constitutionality of a statute is a question of law, which we review *de novo. State v. Borrell*, 167 Wis. 2d 749, 762, 482 N.W.2d 883, 887 (1992). Statutes are presumed to be constitutional. *Id.* Every presumption must be indulged to sustain the constitutionality of statutes whenever possible, and should doubt exist, it must be resolved in favor of constitutionality. *Zintek v. Perchik*, 163 Wis. 2d 439, 478, 471 N.W.2d 522, 538 (Ct. App. 1991). Therefore, a party challenging the constitutionality of a statute bears the burden of proving unconstitutionality. *Id.* at 479, 471 N.W.2d at 538.

The respondent argued, and the trial court agreed, that the statutes' only or primary purpose is to coerce forfeiture payment. The trial court concluded that "the legislature, when enacting §§ 800.09(1)(c) and § 800.095 and amending § 800.09(1)(a) Wis. Stats.

---

statutory provision that senate consent was only required "at the next regular session." *See id.* at 517-521, 126 N.W.2d at 216-217.

In *Smith*, however, the supreme court was considering only one unambiguous statute. Here, in contrast, we are evaluating several apparently unambiguous statutes that conflict. To refrain from reading logical words into one statute would be to destroy the authority of the others. Thus, in this case, while arguing for what they characterize as judicial restraint, the respondents actually are urging judicial activism by seeking to have this court overturn the very municipal court authority that the legislature has explicitly provided.

unlawfully used its police power for the primary purpose of raising revenue and not to promote the public welfare." On appeal, the respondents further maintain that with this "collection measure," the municipal courts unconstitutionally exert a "purely pecuniary interest of the city," without any "protective purpose . . . served by the law." We reject this argument.

By enacting §§ 800.09 and 800.095, STATS., the legislature explicitly granted municipal courts the authority to suspend drivers' licenses. Whether that constitutes a lawful exercise of police power depends on whether it is rationally related to furthering a proper public purpose.[8] *See State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654, 660 (Ct. App. 1989). That is determined by a two-step analysis. First, we consider whether the statutes promote a proper public purpose. *Id.* Second, we determine whether the statutory scheme is reasonably related to the accomplishment of that purpose. *Id.*

Courts must not interfere with the municipal exercise of police power unless the exercise is clearly illegal. *J & N Corp. v. City of Green Bay*, 28 Wis. 2d 583, 585, 137 N.W.2d 434, 436 (1965). As the supreme court explained:

> Municipalities glean their powers from the
> state constitution and statutes. Under § 62.11(5),

---

[8] Having a driver's license is not an inherent right. *Steeno v. State*, 85 Wis. 2d 663, 671, 271 N.W.2d 396, 400 (1978). Therefore, because we are not dealing with a fundamental right, the applicable standard of evaluation is whether the statute is rationally related to furtherance of a proper public purpose. *See State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654, 660 (Ct. App. 1989).

STATS., municipal legislative bodies are granted the power

> to act for the government and good order of
> the city, for its commercial benefit, and for
> the health, safety, and welfare of the pub-
> lic, and may carry out [their] powers by
> license, regulation, suppression, borrowing
> of money, tax levy, appropriation, fine,
> imprisonment, confiscation, and other nec-
> essary or convenient means. The powers
> hereby conferred shall be in addition to all
> other grants, and shall be limited only by
> express language.

*Tavern League v. City of Madison*, 131 Wis. 2d 477, 483, 389 N.W.2d 54, 55-56 (Ct. App. 1986) (footnote omitted; brackets in original).

As the respondents acknowledge, municipal courts may impose penalties under ordinances that "accomplish[ ] important public goals which are consistent with the city's obligation under the police power to protect the health, safety, and welfare of its citizenry." *City of Milwaukee v. Hoffmann*, 29 Wis. 2d 193, 199, 138 N.W.2d 223, 226 (1965). They may not use that power, however, for the primary purpose of raising revenue. *See id.* at 199-201, 138 N.W.2d at 226-227.

Respondents contend that the city's only interest served through this "collection measure" is a pecuniary one. This argument is absurd. Indeed, not only are three critical interests readily apparent, but, in comparison to them, the city's "pecuniary interest" seems almost incidental.

First, deterrence and punishment of disorderly conduct, trespassing, and other non-traffic related

behavior prohibited by city ordinances are valid public purposes. Consequences for violations in the form of forfeitures are statutorily authorized. Forfeitures without enforcement would undermine the ordinances and ultimately prevent them from accomplishing their valid public purposes. Thus, enforcement of the forfeiture order is inextricably connected to the health, safety, and welfare purposes of the ordinances themselves.

Second, implementation of court orders through a range of enforcement alternatives is a valid public purpose served by statutes affording courts discretion to consider individual circumstances. The legislature has declared that municipal courts can utilize incarceration to ensure compliance with forfeitures absent indigency or good cause. *See* § 800.095, STATS.; *see also State ex rel. Pederson v. Blessinger*, 56 Wis. 2d 286, 297, 201 N.W.2d 778, 784 (1972). Ironically, respondents' theory would have us conclude that the statutes require municipal courts to enforce their orders with a fist rather than a coaxing hand. The statutes challenged in this case serve a valid public purpose by providing municipal courts with the power to attempt to enforce court orders with license suspension instead of incarceration.[9]

Third, preservation of the integrity of the municipal courts is a valid public purpose served by statutes that enable courts to maintain the credibility of their orders. Although phrased in terms of the court's inher-

---

[9] Further, we note also that the statutes provide for additional individual consideration. Although the statutes allow for municipal courts to suspend a license for up to five years, they require neither suspension nor any other enforcement method. Further, they allow municipal courts to forego such consequences for good cause or for reasons of indigency.

ent authority, the supreme court's declaration seems equally appropriate here:

> From time immemorial, certain powers have been conceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their business, nor accomplish the purposes of their existence.

*State v. Cannon*, 196 Wis. 534, 536, 221 N.W. 603, 603 (1928).[10]

---

[10] The trial court also relied on *People v. Linder*, 535 N.E.2d 829 (Ill. 1989), in support of its conclusion that the suspension enforcement option was unconstitutional. In that case, Linder challenged an Illinois statute that permitted automatic revocation of a driver's license after conviction of certain crimes, which included the crimes of sexual assault and sexual abuse for which Linder had been convicted. *Id.* at 830-831. The Illinois Supreme Court struck down the statute as violating Linder's due process rights concluding that, because no vehicle had been involved, the revocation bore no relationship to Linder's crimes. *Id.* at 833. We conclude that the trial court's reliance on *Linder* was misplaced. Here, unlike *Linder*, the suspension is not an additional punishment. Instead, the suspension is a means to enforce compliance.

As part of its due process analysis, the trial court also concluded that the statutes were unconstitutional because the respondents were "denied access to even petition for an occupational license" under § 343.10 because the respondents' operating privileges were suspended under chapter 800 instead of under chapter 343. The trial court reasoned that a driver's license is an interest protected by due process, and "the denial of the opportunity to apply for an occupational license, bears no reasonable relationship to the collection of non-traffic forfeitures." This trial court conclusion is confused. The municipal courts have not deprived the respondents of their eligibility for occupational licenses. The respondents' failures to pay their

521

**B. The Eighth Amendment.** The respondents do not challenge the amount of the underlying forfeitures as being excessive.[11] Rather, the respondents claim that the subsequent suspension of their drivers' licenses constituted "excessive fines" contrary to the Eighth Amendment of the United States Constitution and Article I, § 6 of the Wisconsin Constitution.[12] We reject their argument.

court-ordered forfeitures have resulted in suspensions that, in turn, have foreclosed their eligibility until they gain reinstatement of their licenses. In the analogous context involving nonpayment leading to incarceration, the supreme court stated that "the defendant has a key to his imprisonment and it is only his contumacy which keeps him from enjoying his liberty." *State ex rel. Pederson v. Blessinger*, 56 Wis. 2d 286, 294-295, 201 N.W.2d 778, 783 (1972). Similarly, here, only the respondents' contumacy limits their eligibility for occupational licenses.

[11] While conceding in its brief to this court that the forfeitures are not excessive, respondents argue, nonetheless, that suspending licenses "to coerce collection is abusive and the equivalent of an amercement." Respondents do not explain, however, how this theory is in any way distinguishable from their Eighth Amendment argument.

[12] "The prohibitions of the eighth amendment apply to the states through the due process clause of the fourteenth amendment." *State v. Scherreiks*, 153 Wis. 2d 510, 520 n.3, 451 N.W.2d 759, 763 n.3 (Ct. App. 1989). The respondents do not argue that we should apply a stricter interpretation of article I, section 6 of the Wisconsin Constitution; therefore, we analyze this issue according to the law developed under the Eighth Amendment.

The parties' arguments regarding the applicability of the Eighth Amendment to the United States Constitution and Article I, § 6 of the Wisconsin Constitution are poorly developed. Respondents only argue that suspension of their drivers' licenses violated the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and Article I, § 6

The suspension of driving privileges in order to secure compliance with the orders of the municipal court, when such driving privileges can be reinstated upon payment of the forfeiture, in effect, operates as a remedial or civil contempt order. "The Excessive Fines Clause does not apply to . . . sanctions imposed to obtain compliance with court orders." *U.S. v. City of Yonkers*, 856 F.2d 444, 459 (2d Cir. 1988), *reversed on other grounds sub nom., Spallone v. United States*, 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990). The Excessive Fines Clause applies "to sanctions imposed to punish past conduct, not to sanctions imposed to secure prospective compliance." *Id.* Here, because the suspension provision operates to secure the respondents' prospective compliance with the courts' orders, the Excessive Fines Clause does not apply.[13]

---

of the Wisconsin Constitution; they do not put forth any cogent argument under the "cruel and unusual punishment" clauses of the constitutions. *See Alexander v. United States*, 125 L.Ed.2d 441, 455 (1993) (noting the difference between the "cruel and unusual punishment" clause and the "excessive fines" clause); *see also Austin v. United States*, 125 L.Ed.2d 488, 497 (1993).

Neither party addresses whether suspension of one's driving or operating privileges is a "fine" under the Excessive Fines Clause. The caselaw states that a "fine" under the Excessive Fines Clause means either a fine or forfeiture that is "a form of *monetary* punishment," *see Alexander*, 125 L.Ed.2d at 455 (emphasis added); *Austin*, 125 L.Ed.2d at 497, 500 n.7 & 505,"whether in cash or in kind," *Austin*, 125 L.Ed.2d at 497. We find no authority stating that a driver's license is property protected by the Excessive Fines Clause.

[13] Appellants argue that the Eighth Amendment only applies to criminal cases. Municipal ordinance violations are, however, *quasi*-criminal proceedings. *See City of Janesville v. Wiskia*, 97 Wis. 2d 473, 481-482, 293 N.W.2d 522, 527 (1980).

## IV. MUNICIPAL COURT JURISDICTION

The Respondents argue that municipal courts "are not constitutional courts but mere creatures of the legislature with the least judicial powers of any court known to the law." They contend, therefore, that municipal courts are courts of limited jurisdiction with circumscribed authority and that, under §§ 755.045 and 66.117, STATS., this method of enforcement is precluded. We disagree.

The supreme court has clarified that municipal court authority even may extend to issues of constitutionality, despite the lack of explicit statutory authority:

Additionally, citing *Uphaus v. Wyman*, 360 U.S. 72 (1959), they contend that the Eighth Amendment does not apply to civil contempt actions. *See also Ingraham v. Wright*, 430 U.S. 641, 668 (1977). Respondents, however, point to the recent decision, *Austin v. United States*, 125 L.Ed.2d 488, 497-498 (1993), in which the Supreme Court held that the Eighth Amendment was applicable in an *in rem* civil forfeiture case. *Austin* held that in considering the Excessive Fines Clause of the Eighth Amendment, the question is not whether a forfeiture or fine "is civil or criminal, but rather whether it is punishment." *Id.* at 497-498; *see also Alexander v. United States*, 125 L.Ed.2d 441, 455-456 (discussing and remanding for Eighth Amendment analysis regarding *in personam* criminal forfeiture). Although the parties do not address the continued viability of *Uphaus* in light of *Austin* and *Alexander*, we note that *Austin* and *Alexander* dealt with forfeitures to punish past conduct and the Supreme Court did not indicate any departure from its holding in *Uphaus*. We do, however, also note that at the time *Uphaus* was decided, the Eighth Amendment was generally only considered to apply to criminal cases. *See Ingraham*, 430 U.S. at 668.

524

> A municipal court under the constitution is a repository of judicial power even as are the supreme court, the court of appeals, and the circuit court . . .. It is the constitution . . . that gives the legislature the power to create courts, which by enabling legislation are then endowed with the constitutionally bestowed attributes of judicial powers. The legislature is but a catalyst in this process of court creation. The municipal court is a court that is constitutionally a part of the court system.
>
> . . . .
>
> Thus, in conformity to the "separation of powers" doctrine, a municipal court, as a part of the judicial branch, must have the inherent authority to rule on constitutional issues affecting the municipal ordinance which is involved in the case before it.

*City of Milwaukee v. Wroten*, 160 Wis. 2d 207, 219-220, 466 N.W.2d 861, 865-866 (1991). "The only meaningful distinction between court levels is the distinction between appellate courts' and all other courts." *Id.* at 217, 466 N.W.2d at 864 (footnote and citation omitted). Respondents do not explain how, on the one hand, municipal courts have been "bestowed" with the authority to order forfeitures, but, on the other hand, have not been given the "attributes of judicial powers" to enforce their orders in the very manner the legislature explicitly established. As the League of Wisconsin Municipalities accurately notes, "Respondents confuse jurisdiction with method[s] of enforcement."

■■■

Section 755.045, STATS., which prescribes the jurisdiction of municipal courts, is not inconsistent with the legislature's grant of municipal court authority to suspend drivers' licenses under §§ 800.09 and 800.095, STATS. Section 755.045 provides, in part:

> **(1)** A municipal court has exclusive jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality that operates the court
> . . ..

The respondents offer no authority to establish that, on the one hand, the legislature provided municipal courts with a full body of authority but, on the other hand, left the body hollow by enacting separate enforcement authority that the municipal courts could never utilize. We conclude that 755.045 does not preclude municipal court authority to suspend drivers' licenses.

Nor does § 66.117, STATS., deprive municipal courts of "jurisdiction" to suspend the driving privileges of one who has failed to pay a municipal forfeiture. Section 66.117, STATS., states, in part:

> **Outstanding unpaid forfeitures.** . . . Except as provided under sub. (2), any municipality may refuse to issue any license or permit to a person who has not paid an overdue forfeiture resulting from a violation of an ordinance of the municipality.

Subsection (2) lists marriage licenses, hunting or fishing licenses, and dog licenses as being those municipal licenses that a municipality cannot refuse to issue to a party who has failed to pay a municipal forfeiture. Respondents maintain that under the doctrine of statutory construction, *expressio unius est exclusio alterius*, this enumeration of specific powers excludes other enforcement mechanisms for a municipality to assure payment of forfeitures. We conclude, however, that § 66.117 merely provides additional remedies against persons delinquent in the payment of forfeiture assess-

ments. This section does not void municipal court authority under §§ 800.09 and 800.095, STATS.

## V. CONCLUSION

Statutorily, the municipal courts have authority to suspend drivers' licenses for failures to pay forfeitures. Constitutionally, their authority to do so furthers legitimate interests that protect the health, safety, and welfare of citizens through the exercise of valid police powers. Here, as in *Hoffmann*, "the primary purpose" of the statute is not to raise revenue, but rather, "to promote the public welfare." 29 Wis. 2d at 199, 138 N.W.2d at 226. Here, as in *Hoffmann*, the fact that there is a fiscal consequence "does not corrupt the otherwise constitutional purposes of the statutes." *Id.* Accordingly, we conclude that in §§ 800.09 and 800.095, STATS., the legislature has provided municipal courts with a constitutional method to enforce forfeiture orders.

*By the Court.*—Judgment reversed.